Submitted January 15, reversed February 18, 2016

Jennifer D. KING,
*Petitioner-Respondent,*

*v.*

W. T. F.,
*Respondent-Appellant.*

Lane County Circuit Court
181420818; A158146

369 P3d 1181

Michael Arnold, Emilia Gardner, and Arnold Law filed the brief for appellant.

No appearance for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

Respondent appeals from a judgment granting petitioner's request for a permanent stalking protective order (SPO) against him under ORS 30.866.[1] He contends that there was insufficient evidence to support the trial court's entry of the SPO. We agree with respondent and, therefore, reverse.

Petitioner and respondent were involved in a three-year romantic relationship. Both were married to other people at the time. Petitioner ended the relationship, but the parties continued to have contact as friends. In late December 2013, petitioner ended the friendship by a written message instructing respondent to cease all contact with her. Notwithstanding that request, over the next few months, respondent continued to contact petitioner through emails, letters, text messages, and social media.

In April 2014, on Easter, petitioner discovered a bouquet of flowers on her doorstep, which she believed was from respondent. Although the flowers were unaccompanied by a card or message, petitioner testified that they were the exact bouquet of flowers that respondent had purchased for her during the course of their romantic relationship. In the meantime, respondent had created an online dating profile that displayed approximately 16 photographs of places where petitioner and respondent had planted daffodils and tulips for petitioner's birthday, in October 2013. Respondent then used that profile to view petitioner's existing dating profile almost daily during the month of April.

In early August 2014, petitioner learned that respondent had accepted a job in the same city as she and that respondent was moving there without his family.[2] Shortly thereafter, respondent joined a gym that petitioner had previously attended and began attending workout classes. By

---

[1] In civil stalking cases, we ordinarily refer to the parties by their designation in the trial court. *See Sparks v. Deveny*, 221 Or App 283, 285 n 1, 189 P3d 1268 (2008).

[2] At the SPO hearing, respondent denied that he had moved to be near petitioner and explained that the new job was a career opportunity accompanied by a large increase in pay.

that time, petitioner no longer went to the gym and, therefore, did not have further contact with respondent there. On several occasions, petitioner encountered respondent at two Starbucks locations near respondent's work place and gym. The first time was on August 28, when petitioner saw respondent with a group of people. Although the parties made eye contact, respondent did not attempt to speak or otherwise contact petitioner. In early September, petitioner again saw respondent at Starbucks, standing at a table near the entrance. As with the first encounter, neither party engaged the other. On September 27, petitioner reactivated her online dating profile. Beginning on September 29, respondent resumed viewing petitioner's profile daily until petitioner deactivated her account in early October.

On October 7, 2014, petitioner was at a Starbucks when respondent got in line behind her. The parties made eye contact; respondent said "hello my friend" and told petitioner, "You look good" and "It's good to see you." Petitioner was unresponsive at first but then asked respondent if he was happy that he had stripped away everything in her life. Respondent answered, "No, I'm not happy, you know I'm not happy. You know I don't have what I want." Respondent offered to buy petitioner's coffee, and petitioner declined. Petitioner left, and respondent followed her out to the parking lot to continue the conversation. He repeatedly stated that he was "not happy" and did not have what he wanted. At one point, when the car parked next to petitioner began to back out, respondent grabbed petitioner's arm and told her to be careful. Petitioner yelled at respondent to get away; respondent put his hands up and stepped back.

Several days later, on the morning of October 13, 2014, petitioner arrived at Starbucks with her son. It was petitioner's birthday. Respondent was there, sitting at a table by himself. Although petitioner's son had waved to respondent, respondent left without making contact with petitioner or her son. On her way out, petitioner noticed an envelope and a bag of coffee on a stool next to the door; her name was written on the envelope multiple times in different handwriting. Inside was a birthday card that had been signed

by employees from multiple Starbucks locations.[3] Later that day, petitioner filed for an SPO.

At the hearing on her petition, petitioner, representing herself, testified that she felt "endangered" and "invaded" by respondent's behavior. In response to the trial court's query about what she was afraid of, petitioner explained:

"I'm afraid that one day his obsession will peak. That if he can't have me, nobody else will. It's I don't understand how it's been this long and he still does this. I—I don't know if he would hurt me, or if he would just take me, or if he would just hurt somebody that was close to me. I don't know, but I know I can't live like this anymore."

Petitioner also testified that, although respondent had never threatened her, she believed that he was nevertheless "capable" of hurting her:

"[PETITIONER]: I think it would be easier for all of us if [I] could sit here and say he threatened me, or he did this, or he did this. Has he outright * * * threatened me? No. * * * If I had the black and white case to sit there and say yes he threatened to do this to me on this day, no. But being in the relationship with a man for three years I know what he's capable of. I know when he looks at me and says, you know, 'I don't have what I want. You know what I want.' It's not something that I can put tangibly in front of you, except I know after three years what that is.

"THE COURT: What is that?

"[PETITIONER]: That is I will stay on this trail until you remember that we're supposed to be together. And I honestly just think that until I'm with him, that he will continue this until he hurts me or somebody close to me to get my attention."

At the conclusion of that hearing, the trial court granted petitioner's request for a permanent SPO. The trial court found that respondent had engaged in multiple unwanted "contacts" with petitioner and that petitioner was subjectively alarmed or coerced as a result of those contacts.[4]

---

[3] Respondent had not signed the card himself.

[4] The trial court also found that some of the incidents, including the letters, emails, text messages, and cards sent by respondent to petitioner were not

Moreover, the trial court concluded that, in light of respondent's "clear desire to continue" the parties' past romantic relationship and respondent's "obsession" with petitioner, it was objectively reasonable for petitioner to have been alarmed or coerced. Finally, the court concluded that the contacts caused petitioner reasonable apprehension regarding her personal safety:

> "In this case, unwanted sexual relationship by definition is a danger to one's personal safety. And in this case, the respondent's pursuit of such [a] relationship with the petitioner is frankly relentless, and it is appearing to be escalating, culminating in this October 7th and then October 13th incidents."

"When the sufficiency of the evidence supporting an SPO is challenged on appeal, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *Van Hoesen v. Williams*, 271 Or App 466, 467, 351 P3d 808 (2015). We review the trial court's factual findings for "any evidence" and its legal conclusions for errors of law. *Id.*

ORS 30.866(1), Oregon's civil stalking statute, provides:

> "(1)   A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:
>
> "(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other

---

qualifying contacts because they did not involve threats to petitioner's safety. *See State v. Rangel*, 328 Or 294, 302-03, 977 P2d 379 (1999) (a contact that involves written or oral speech is protected under Article I, section 8, of the Oregon Constitution, and is punishable only if it is a threat—that is, "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts"). The court did consider those nonqualifying contacts as context for petitioner's other actions. *See Habrat v. Milligan*, 208 Or App 229, 237, 145 P3d 180 (2006) (contacts that do not otherwise qualify for the purposes of an SPO "nevertheless, are relevant context for respondent's nonexpressive contacts with petitioner").

person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

To obtain an SPO under ORS 30.866(1), a petitioner must prove, by a preponderance of the evidence, that each requirement of that statute has been met. *Miller v. Hoefer*, 269 Or App 218, 222-23, 344 P3d 121 (2015). First, a petitioner must "demonstrate that there were two or more unwanted contacts with either the petitioner or a member of the petitioner's immediate family within the previous two years." *Christensen v. Carter/Bosket*, 261 Or App 133, 139, 323 P3d 348 (2014). The term "contact" includes "almost any interaction with the petitioner." *Id.* at 140. *See* ORS 163.730(3) (defining "contact"). A petitioner must also show that she was "subjectively alarmed or coerced by each contact and that the alarm or coercion was objectively reasonable for a person in the victim's situation." *Brown v. Roach*, 249 Or App 579, 583, 277 P3d 628 (2012) (internal quotation marks omitted). In the SPO context, "alarm" means to "cause apprehension or fear resulting from the perception of danger," while "coerce" means "to restrain, compel or dominate by force or threat." *See* ORS 163.730(1), (2). The term "danger" refers to "a threat of physical injury, [and] not merely a threat of annoyance or harassment." *Brown*, 249 Or App at 586. Finally, "the contacts, cumulatively, [also] must give rise to subjective apprehension regarding the petitioner's personal safety or the personal safety of a member of the petitioner's immediate family or household, and that apprehension must be objectively reasonable." *Blastic v. Holm*, 248 Or App 414, 418, 273 P3d 304 (2012). "To determine whether a petitioner's apprehension is objectively reasonable, we consider 'all of the circumstances of the parties' relationship.'" *Tesema v. Belete*, 266 Or App 650, 654, 338 P3d 776 (2014) (quoting *Brown*, 249 Or App at 587).

On appeal, respondent asserts several reasons why the evidence did not support the entry of the SPO.[5] We, however, address only one of respondent's arguments, which is dispositive. Having reviewed the record, we conclude that, even assuming that the evidence is sufficient to prove that respondent engaged in repeated and unwanted contact that caused petitioner objectively reasonable alarm, ORS 30.866(1)(a) and (b), there was insufficient evidence from which the trial court could conclude that those contacts reasonably put petitioner in fear for her personal safety, or the personal safety of a member of her immediate family or household, ORS 30.866(1)(c).

Although petitioner testified that she was, in fact, afraid for her personal safety, "that apprehension, too, must be objectively reasonable." *Braude v. Braude*, 250 Or App 122, 129, 279 P3d 290 (2012). At the SPO hearing, petitioner acknowledged that the contacts between respondent and her were nonthreatening. Instead, petitioner's testimony suggested that the contacts made her afraid for her personal safety because they were unwelcome, and because she knew what respondent was "capable of."

To be sure, we have recognized that "conduct that might appear benign when viewed in isolation can take on a different character when viewed either in combination with or against the backdrop of one party's aggressive behavior toward the other." *Braude*, 250 Or App at 130; *see also Habrat*, 208 Or App at 239 (the petitioner's knowledge that the respondent's girlfriend feared personal harm from him added to the reasonableness of the petitioner's concerns, even where the contacts themselves were not inherently threatening). The record in this case, however, reveals no evidence suggesting that petitioner's relationship with respondent had ever been violent, or that respondent has any history of violence whatsoever. *See Miley v. Miley*, 264 Or App 719, 722, 335 P3d 853 (2014) (reversing SPO where the petitioner did not testify that she felt threatened by the respondent, the respondent had no history of violence, and the content of

---

[5] Specifically, respondent argues that the trial court erred because the evidence does not show that he engaged in two or more unwanted contacts that caused objectively reasonable alarm to petitioner and that reasonably put her in fear for her personal safety. Petitioner made no appearance on appeal.

the communications consisted of "vindictive name-calling" rather than threats); *Braude,* 250 Or App at 130-31 (evidence of the respondent's past violence toward the petitioner on two occasions five years prior to the SPO was too remote and isolated to support a conclusion that a reasonable person in the petitioner's position would have felt apprehension for her personal safety).

In the absence of inherently threatening contacts, something more is required than merely "unsettling, unusual, or unpleasant" contact. *See Huber v. Landolt,* 267 Or App 753, 760-61, 341 P3d 175 (2014) ("The legislature has not authorized trial courts to issue SPOs for unwanted contact that is unsettling, unusual, or unpleasant. * * * That is, the respondent's unwanted contacts must have caused the petitioner objectively reasonable apprehension that the respondent will engage in violence or other conduct that puts the petitioner or her family at risk."); *Sparks v. Deveny,* 221 Or App 283, 292-93, 189 P3d 1268 (2008) (in the absence of any threatening behavior, the respondent's continued attendance at the petitioner's exercise class, even after being told to stop, would not cause a reasonable person apprehension for her personal safety); *cf. Delgado v. Souders,* 334 Or 122, 135-37, 46 P3d 729 (2002) (circumstances surrounding contacts gave rise to concerns for personal safety where on several occasions, the respondent silently and swiftly walked up behind the petitioner, a stranger, when no other people were nearby and then quickly walked away, glancing in the petitioner's direction).

In this case, although it is clear that respondent engaged in a series of unwelcome contacts with petitioner, there is no basis for concluding that respondent's behavior would have caused petitioner to have an objectively reasonable fear for her personal safety. As noted, petitioner acknowledged that respondent's contacts were nonthreatening. She cited a fear that respondent would eventually harm her because of what he "is capable of." In the absence of any actual threatening contacts or a previous history of threats or violence, however, petitioner's fear for her personal safety cannot be considered objectively reasonable for purposes of ORS 30.866.

Reversed.