Submitted January 6, reversed April 1, 2020

I. T.,
*Petitioner-Respondent,*

*v.*

Miguel Angel Pacheco SOLIS,
*Respondent-Appellant.*

Umatilla County Circuit Court
18PO12027; A170193

462 P3d 767

Respondent appeals a restraining order that petitioner obtained against him under the Family Abuse Prevention Act (FAPA). ORS 107.700-107.735. Respondent contends that the trial court erred when it entered the FAPA order because "petitioner did not prove *** that respondent abused the petitioner within the previous 180 days, *** that the petitioner was in immediate danger of further abuse, and that respondent represented a credible threat to her safety." *Held*: The evidence was insufficient to establish that respondent posed an imminent danger of further abuse to petitioner or a credible threat to her safety at the time of the hearing.

Reversed.

Eva J. Temple, Judge.

John L. Ballard filed the brief for appellant.

No appearance for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed.

**TOOKEY, J.**

Respondent appeals a restraining order that petitioner obtained against him under the Family Abuse Prevention Act (FAPA). ORS 107.700-107.735.[1] Respondent contends that the trial court erred when it entered the FAPA order because "petitioner did not prove * * * that respondent abused the petitioner within the previous 180 days, * * * that the petitioner was in immediate danger of further abuse, and that respondent represented a credible threat to her safety." Because we conclude that the evidence is insufficient to establish that respondent posed an imminent danger of further abuse to petitioner or a credible threat to her safety at the time of the hearing, we reverse.

Petitioner did not file a brief on appeal and, because this is not an exceptional case, we deny respondent's request for *de novo* review. *Patton v. Patton*, 278 Or App 720, 721, 377 P3d 657 (2016). Accordingly, we "review the facts for any evidence and the legal conclusions based on those facts for errors of law." *Travis v. Strubel*, 238 Or App 254, 256, 242 P3d 690 (2010).

At the time the events in this case unfolded, petitioner and respondent were husband and wife and had a one-year-old son. In addition, petitioner had an eight-year-old child from a previous relationship, who was respondent's stepson. In May 2018, petitioner and respondent had separated and were not living together.

In July, respondent tried to choke petitioner in his apartment because someone had told respondent that petitioner was seeing another person. Petitioner did not report that incident to police.

Beginning in August, petitioner and respondent started to exchange the children for visitation in the parking lots of their respective apartment complexes and in a nearby hospital parking lot. Petitioner and respondent remained in contact and frequently exchanged texts and phone calls to arrange for visitation until petitioner filed

---

[1] In civil restraining order cases, we ordinarily refer to the parties by their designation in the trial court. *King v. W. T. F.*, 276 Or App 533, 534 n 1, 369 P3d 1181 (2016) (so stating).

for a restraining order in early December. When respondent was still in contact with petitioner before she filed for the restraining order in December, respondent called petitioner a "whore" and made other derogatory comments about petitioner. Respondent also would insult petitioner in front of her eight-year-old son when he visited respondent.

On December 3, petitioner filed a restraining order petition, and the court held an *ex parte* hearing the following day. At that *ex parte* hearing, petitioner testified that, on "one occasion [petitioner] attempted to choke" her, that they had "had other *** verbal confrontations," and that respondent was "always insulting" her whenever they would talk. Petitioner also testified that respondent had not been helping her out with child-rearing expenses since the parties separated in May. The trial court issued a temporary restraining order restraining respondent from having contact with petitioner, granting petitioner temporary custody of their one-year-old son, ordering that respondent not have any parenting time with his son, and ordering respondent to pay petitioner $1,500 in emergency monetary assistance.

Respondent requested a hearing to contest the order. At that hearing, petitioner testified that respondent had "tried to choke [her] on one occasion," that respondent frequently insulted petitioner, and that, when petitioner would ask for financial assistance, "he would ask for sex" and told petitioner that, "[i]f [she] didn't give him any sex, don't expect for [respondent] to help [her] any longer because [they] were not living together anymore." Respondent denied petitioner's allegations of abuse and explained how he had continued to help petitioner with child-rearing expenses without ever demanding any sexual relations in return. Respondent testified that the parties continued to communicate and exchange the children for visitation without incident until the temporary FAPA order went into effect in December.

At the close of petitioner's case, and again at the conclusion of the hearing, the court denied respondent's motion to dismiss the petition and terminate the order. In ordering that the restraining order would remain in effect, the court reasoned that, after the choking incident,

"the parties changed practices and did their [child] exchanges in a public place, \*\*\* [a]nd so \*\*\* I think that shows caution and some apprehension on her part. And I also am concerned about the testimony that there was coercion, \*\*\* there were strings attached if she wanted to receive funds to support her children."

Although the trial court left the restraining order in place and issued a final restraining order, in so doing, the court modified the order to allow respondent contact and parenting time with his one-year-old son pursuant to a standardized parenting plan. The court also removed the order requiring the respondent to pay petitioner $1,500 in emergency monetary assistance. The court explained:

"I'm going to modify this. And there will be no requirement to pay the $1,500. I would note that there is a child support order [from a different case]. The Administrative hearings officer [in that case] found that the arrearages were $485, and then child support begins February 1st. And so I am going to modify it so that there is no monetary order as part of the restraining order \*\*\* [a]nd [respondent] will need to pay child support according to the child support judgment.

"\*\*\*\*\*

"Okay. I'd just remind the parties that restraining orders are temporary. They are valid for one year unless they are dismissed or extended beyond one year. It would be in everybody's best interests to get that divorce filed and come up with a more permanent parenting plan."

That brings us to the merits of this appeal. To obtain a restraining order under ORS 107.718(1), a petitioner must prove by a preponderance of the evidence that: (1) the respondent abused the petitioner within 180 days preceding the filing of the petition; (2) there is an imminent danger of further abuse to the petitioner; and (3) the respondent represents a credible threat to the physical safety of the petitioner. *See* ORS 107.710(2) ("The petitioner has the burden of proving a claim under ORS 107.700 to 107.735 by a preponderance of the evidence.").

We assume, without deciding, that the choking incident that occurred in July constituted abuse under ORS 107.705(1)(a) and, thus, we do not discuss the first prerequisite

to obtaining a restraining order under ORS 107.718(1).[2] We therefore address respondent's challenge to the sufficiency of the evidence as to the second and third requirements. Accordingly, the issues we address are whether the evidence supported the trial court's conclusion that, (1) petitioner was in imminent danger of further abuse from respondent, and (2) respondent represented a credible threat to petitioner's physical safety at the time of the hearing.

As noted, respondent argues that there is no evidence that his conduct created an imminent danger of further abuse or a credible threat to petitioner's physical safety. Respondent argued during the hearing that, even if he tried to choke petitioner in July, "the parties had contact further on," and "[t]here's nothing here showing imminent danger of further abuse" or a "credible threat to her safety." As we have previously observed, "even if a petitioner makes subjective assertions of fear, a FAPA restraining order will not be upheld when there is insufficient evidence that the alleged conduct creates an imminent danger of further abuse and a credible threat to the physical safety of the petitioner." *Hubbell v. Sanders*, 245 Or App 321, 326, 263 P3d 1096 (2011).

Here, the only evidence of any physically aggressive or threatening behavior towards petitioner or her immediate family concerns the day that respondent tried to choke petitioner, and there is nothing in this record that sheds any light on the specific details surrounding that incident, other than petitioner's statement that respondent "tried to choke" her. Although that behavior presumably constituted abuse under ORS 107.705, it was not persistent, and there is no evidence that any similar incident had occurred prior to, or after, the incident in July. After respondent tried to choke petitioner, the parties continued to communicate and exchange the children outside of respondent's apartment, and petitioner left the children with respondent overnight for visitations until the temporary FAPA order went into effect—nearly five months after respondent tried to choke

---

[2] In this context, "abuse" has three definitions, the pertinent one here being the act of "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury" to family or household members. ORS 107.705(1)(a).

petitioner. On this record, that isolated incident of abuse is insufficient to establish that petitioner was in imminent danger of further abuse or that respondent posed a credible threat to her safety at the time of the hearing. *See Kargol v. Kargol*, 295 Or App 529, 533, 435 P3d 814 (2019) (noting the significance of how the parties' relationship changed once they no longer lived together, and concluding that the evidence fell "short of what would be required to prove an imminent danger of further abuse and a credible threat to petitioner's physical safety"); *Patton*, 278 Or App at 723 (concluding that the respondent pushing and kicking the petitioner on one occasion was insufficient to establish that the petitioner was in imminent danger of further abuse and that the respondent posed a credible threat to her safety because, "[a]lthough his behavior on that day could be considered erratic, aggressive, and angry, it was not persistent, and there [wa]s no evidence that it had occurred prior to, or continued past, the isolated incident").

With regard to respondent repeatedly insulting petitioner, none of those insults "could be reasonably construed as threats of harm (instead of, for example, attempts to harass or annoy)." *Vanik-Burns v. Burns*, 284 Or App 366, 372, 392 P3d 386 (2017); *see Buell v. Buell*, 296 Or App 380, 389-90, 438 P3d 465 (2019) (concluding that the respondent's emails and text messages to the petitioner that "reflect[ed] respondent's emotional reaction to petitioner having left their marriage and his anger and frustration regarding restrictions on his time with [his child]" were insufficient to establish that there was an imminent danger of further abuse to the petitioner because they could not "reasonably be construed as threats of harm" against the petitioner or their child). Although respondent repeatedly insulted petitioner and did so in front of petitioner's eight-year-old son when he visited respondent, that behavior is insufficient to establish that petitioner was in imminent danger of further abuse or that respondent posed a credible threat to her physical safety at the time of the hearing.[3]

---

[3] Under the circumstances of this case, we also conclude that respondent's requests for sexual relations in exchange for financial assistance do not render the record sufficient to show that respondent posed an imminent danger of further abuse to petitioner or a credible threat to her safety at the time of the hearing. We also note that, at the time of the hearing, respondent's ability to place

     In sum, the only evidence that respondent had caused petitioner any bodily harm or threatened her with any bodily harm was the one incident in which respondent tried to choke petitioner. Given the totality of the circumstances, that incident is insufficient to establish that respondent posed an imminent danger of further abuse to petitioner or a credible threat to her safety at the time of the hearing. Accordingly, we conclude that the trial court erred in continuing the restraining order. *See Poulalion. v. Lempea*, 251 Or App 656, 659-60, 284 P3d 1212 (2012) (concluding that the trial court erred in continuing the restraining order where "[t]he only evidence that respondent had caused petitioner bodily harm was her statement that 'he squished me in a doorway,'" because there was "no evidence that respondent posed an imminent danger of further abuse to the petitioner" or that the respondent "represent[ed] a credible threat to her physical safety").

     Reversed.

---

conditions on providing petitioner with financial support for his one-year-old son had been diminished because respondent had been ordered to provide child support in another case.