Submitted January 30, 2020, reversed July 14, 2021

J. D. B.,
*Petitioner-Respondent,*

*v.*

Randy Dennis MULLER
*Respondent-Appellant.*

Umatilla County Circuit Court
18SK02776; A170054

496 P3d 18

Respondent appeals from a final stalking protective order and judgment entered under ORS 30.866, contending that the evidence was insufficient to establish the requisite number of "repeated and unwanted" contacts. Respondent argues that the second alleged requisite contact when he drove by and briefly stopped in front of petitioner's house to take pictures through the window of his pickup truck could not have caused petitioner objectively reasonable alarm. *Held*: It was not objectively reasonable for the second incident to have caused alarm, and, thus, it was not a qualifying contact under ORS 30.866.

Reversed.

Eva J. Temple, Judge.

J. Michael Mattingly and Mattingly Law Firm, LLC, filed the brief for appellant.

No appearance for respondent.

Before Powers, Presiding Judge, and Egan, Chief Judge, and Lagesen, Judge.*

EGAN, C. J.

Reversed.

_____

* Lagesen, J., *vice* Linder, S. J.

**EGAN, C. J.**

Respondent appeals from a final stalking protective order (SPO) and judgment entered under ORS 30.866,[1] contending that the evidence is insufficient to establish the requisite number of "repeated and unwanted" contacts. We agree with respondent and therefore reverse.

Respondent does not request *de novo* review, and this is not an exceptional case warranting that review. *See* ORAP 5.40(8)(c) (*de novo* review is only for exceptional cases). Thus, we review the trial court's factual findings for any evidence and its legal conclusions for errors of law. *Braude v. Braude*, 250 Or App 122, 124, 279 P3d 290 (2012). Absent express findings, we presume that the trial court implicitly found disputed facts consistent with the outcome. *Miller v. Hoefer*, 269 Or App 218, 219, 344 P3d 121 (2015). When the sufficiency of the evidence supporting an SPO under ORS 30.866 is challenged on appeal, "we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *King v. W. T. F.*, 276 Or App 533, 537, 369 P3d 1181 (2016). We state the relevant facts accordingly.

Petitioner's ex-wife lives with her father, respondent. Petitioner and his ex-wife have three children who stay at respondent's house when they are with their mother. Respondent becomes angry when petitioner drives onto respondent's driveway to pick up the children. On October 11, 2018, petitioner drove onto respondent's driveway to pick up a child. Respondent became angry and "rammed, bumped, or

---

[1] ORS 30.866 provides:

"(1) A person may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a person if:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

tapped" his vehicle into petitioner's car three to four times to remove petitioner as a "trespasser." As a result of that incident, petitioner obtained a restraining order. Respondent was arrested and, as a condition for his release, the court issued an order prohibiting him from having contact with petitioner.[2]

Approximately one month later, respondent drove by petitioner's house and briefly—about 30 seconds—stopped in front, taking cell phone pictures of the house through the window of his pickup truck. Petitioner was not at home and did not see respondent. Petitioner's daughter was home and saw the pickup drive by but did not see who was driving it.

To support the issuance of an SPO under ORS 30.866, a petitioner must establish two or more unwanted contacts. *Brown v. Roach*, 249 Or App 579, 583, 277 P3d 628 (2012). "[E]ach 'contact,' individually, must give rise to subjective and objectively reasonable alarm or coercion." *Reitz v. Erazo*, 248 Or App 700, 706, 274 P3d 214 (2012). "Objectively reasonable alarm requires that the apprehension regarding the petitioner's personal safety be objectively reasonable." *Tesema v. Belete*, 266 Or App 650, 654, 338 P3d 776 (2014). When we determine whether a petitioner's apprehension is objectively reasonable, we consider "all of the circumstances of the parties' relationship." *Brown*, 249 Or App at 587.

Based on the two above-described incidents, petitioner sought an SPO. Respondent did not dispute that the first incident was a qualifying contact under ORS 30.866, but disputed that the second incident constituted a "contact." Petitioner testified that a neighbor told him of the picture-taking incident, and that it caused him to be alarmed for his safety and the safety of his daughter, because respondent had already "slammed into the back of [his] car repeatedly" and had access to firearms. Petitioner's daughter testified that when she saw the pickup she did not realize that it was respondent and was not afraid or alarmed, but that when she later learned it was respondent, she became concerned for petitioner's safety, because she knows that respondent can be vindictive. The trial court issued the order, and respondent appeals.

---

[2] Criminal charges were filed but ultimately dropped.

On appeal, respondent contends that the picture-taking incident could not have caused petitioner objectively reasonable alarm and therefore was not a qualifying contact under ORS 30.866, and we agree. This case is similar to *Braude*. There, the petitioner accused the respondents of, among other things, repeatedly driving past her rural home in a manner that caused her alarm. The respondents were spotted driving

> "very slowly along the road in front of petitioner's house; on other days, one of respondents' cars stopped for a short time on the road near the entrance to petitioner's driveway, staying there for up to roughly 10 minutes."

250 Or App at 125. We said in *Braude*, that "[r]espondents' behavior in driving by petitioner's house and photographing it, although unwelcome and unsettling to petitioner, did not itself evince any threat to petitioner's safety." We noted an absence of threatening gestures or comments, *id.* at 129, and we rejected the notion that the behavior of driving by and photographing the house took on a different character against the backdrop of past assaulting conduct by the respondent in that case. *Id.* at 130. We explained that the "parties' past relationship was not so characterized by violence or abuse as to make the more recent contacts objectively threatening," and that the respondent's "past aggression toward petitioner involved only two isolated incidents that occurred almost five years before petitioner sought the SPOs, at the end of a long-term marriage that did not (as far as the record reveals) involve other abuse." *Id.* at 130-31.

Here, as in *Braude*, respondent made no threatening gestures or comments; indeed, petitioner was not even at home during the picture-taking incident, and petitioner's daughter testified that she was not alarmed by the pickup until she learned it was respondent. And, as in *Braude*, this is not a case in which respondent's previous contact is enough to change the character of the otherwise nonthreatening conduct of driving by and taking pictures. Although in *Braude*, we concluded that the five-year time span since any abuse was significant in our determination, that was also in the context of the parties' long-term marriage during which there was no further record of abuse. Similarly, here,

respondent and petitioner have a long history of interacting with each other. The record indicates that their relationship has been "tense," but nothing in the record demonstrates that the isolated incident of violence changed the character of the later otherwise nonthreatening conduct. Finally, although petitioner raised a concern about respondent's access to firearms, the record does not suggest that respondent ever threatened petitioner with firearms. We conclude that the picture-taking incident is not a qualifying contact under ORS 30.866, and that petitioner therefore has failed to establish "repeated" contacts, as required by the statute. The trial court therefore erred in entering the SPO.

Reversed.