No. 101		February 14, 2024		759

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

A. H.,
aka A. J. H.,
*Petitioner-Respondent,*

*v.*

JACK BIRD,
aka Jack Richard Bird,
*Respondent-Appellant.*

Jackson County Circuit Court
23SK00075; A181002

Jeremy A. Markiewicz, Judge.

Argued and submitted January 10, 2024.

Andy Simrin argued the cause for appellant. Also on the briefs was Andy Simrin PC.

George W. Kelly argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed.

**JOYCE, J.**

Petitioner obtained a permanent stalking protective order (SPO) against respondent. Respondent appeals, arguing that the evidence is insufficient to support the SPO. We "view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *J. D. K. v. W. T. F.*, 276 Or App 533, 537, 369 P3d 1181 (2016) (internal quotation marks and citation omitted). Doing so, we reverse.

Petitioner and respondent were in a relationship for about six weeks. After they broke up, petitioner asked respondent not to contact her. Respondent nevertheless continued to contact her, leading to petitioner seeking an SPO. At the hearing on her motion for an SPO, petitioner testified that when she and respondent were together, he often drove recklessly with her in the car, usually after having consumed alcohol. She testified that respondent hit her three times during sex, and that she "told him no." The record does not reflect, beyond that testimony, the nature of the violence, whether it occurred on a single occasion or in separate incidents, or whether after petitioner told respondent not to hit her, he did so on other occasions.

Petitioner also testified to events that occurred after she broke up with respondent. After petitioner told respondent not to contact her, respondent parked outside of her workplace, on eight to 10 occasions, and looked into the windows at her. On one occasion, he followed her to a nearby 7-Eleven as she left work and was going home. On four or five other occasions, respondent followed petitioner home to her apartment. Petitioner testified that respondent also sent her texts and emails, asking to have contact with her and calling her names. Petitioner testified that respondent's actions scared her and explained that she was afraid that respondent might hurt her. In her view, respondent had "displayed a pattern of aggressive behavior that ha[d] gotten worse and worse." She was also concerned because she knew that respondent was an "MMA" coach, which involves a kind of fighting skill.

After hearing the evidence, the trial court granted the SPO. The court observed that the case was a "very close call" under Oregon law. But it concluded that respondent engaged in multiple unwanted contacts, that it was objectively reasonable for a person in petitioner's position to have been alarmed by the contacts, and that the contacts caused her a reasonable apprehension for her own personal safety. *See* ORS 30.866(1) (requiring "repeated and unwanted contact" that causes objectively reasonable alarm for the victim and "reasonable apprehension" regarding their personal safety). As to the latter element, the court based its ruling on "the testimony that was given from [petitioner] regarding the two or three incidents of being slapped while having sex when that was against her will, even after the first time of her telling him \* \* \* she did not want that." In the court's view, that evidence distinguished the case from cases like *J. D. F.*, 276 Or App 533, where "there was no violence in the relationship prior to those—\* \* \* the contacts they counted in that case for the stalking contacts."

Respondent appeals. He does not challenge the court's findings that he engaged in two or more unwanted contacts and that those contacts alarmed petitioner; rather, he challenges only the court's conclusion that her alarm was objectively reasonable and that she had a reasonable apprehension for her personal safety.[1] We agree with respondent that the court erred in concluding that respondent's conduct gave petitioner reasonable apprehension for her personal safety. Accordingly, we reverse.

Importantly, the basis upon which the trial court concluded that petitioner had met her burden to prove that she had a reasonable apprehension for her personal safety—that petitioner testified as to "two or three incidents of being slapped while having sex when that was against her will, even after the first time of her telling him \* \* \* she did not want that"—is not based on evidence in the record.

---

[1] Respondent also assigns error to the trial court's admission of a photograph of respondent engaging in "sadistic pornography," a photo that petitioner found on the internet before she broke up with respondent. The trial court admitted it for the limited purpose of "giving context to the relationship." We need not resolve that claim of error because even considering the exhibit, we still conclude that the record is insufficient to warrant an SPO.

As previously described, the testimony was actually quite vague, including as to whether respondent ever hit petitioner during sex after she told him no. The minimal evidence regarding hitting during sex while the parties were dating is too vague to support an SPO.

That leaves the remaining conduct of circling her workplace and peering in the windows and following her home. To be sure, that conduct is undoubtedly unsettling and frightening to petitioner. Under Oregon law, however, something more is required than merely "unsettling, unusual, or unpleasant" contact. *See P. M. H. v. Landolt*, 267 Or App 753, 760-61, 341 P3d 175 (2014) ("The legislature has not authorized trial courts to issue SPOs for unwanted contact that is unsettling, unusual, or unpleasant."); *H. B. S. v. Deveny*, 221 Or App 283, 292-93, 189 P3d 1268 (2008) (in the absence of any threatening behavior, the respondent's continued attendance at the petitioner's exercise class, even after being told to stop, and following the petitioner in his car would not cause a reasonable person apprehension for her personal safety); *J. L. B. v. K. P. B.*, 250 Or App 122, 129, 279 P3d 290 (2012) (the respondents' conduct did not support issuance of SPO when the respondents drove by the petitioner's home and photographed it). Rather, "the respondent's unwanted contacts must have caused the petitioner objectively reasonable apprehension that the respondent will engage in violence or other conduct that puts the petitioner or her family at risk." *P. M. H.*, 267 Or App at 761. The record here does not contain evidence necessary to meet that standard.

To be sure, we consider "all of the circumstances of the parties' relationship" in determining whether the petitioner has a reasonable apprehension for their personal safety. *E. T. v. Belete*, 266 Or App 650, 654, 338 P3d 776 (2014) (internal quotation marks and citation omitted). "[C]onduct that might appear benign when viewed in isolation can take on a different character when viewed either in combination with or against the backdrop of one party's aggressive behavior toward the other." *J. L. B.*, 250 Or App at 130. The difficulty here, again, is that the record is not adequately developed to allow us to conclude that respondent

engaged in prior violent behavior that would give rise to an objectively reasonable apprehension for petitioner's safety in the future.

Reversed.